

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed September 21, 2006             **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM ROBERT HENDERSON, SR. | § | CASE NO. 06-50085-RLJ-12 |
| AND CHARLOTTE ANN HENDERSON, | § | |
| | § | |
| DEBTORS | § | |

## **MEMORANDUM OPINION**

Monsanto Company and Monsanto Technology, LLC (collectively "Monsanto") seeks modification of the automatic stay to allow Monsanto to proceed on its action against the debtor William Robert Henderson, Sr. (sometimes referred to as "Henderson") in the United States District Court for the Eastern District of Missouri. Specifically, Monsanto requests that the Court modify the automatic stay for the limited purpose of allowing Monsanto to establish the amount of its claim against Henderson in the district court proceeding. Henderson and his wife, Charlotte Ann Henderson, both of which are debtors in this bankruptcy proceeding, contest Monsanto's

motion, submitting that they should not be required to litigate Monsanto's claim in Missouri and that Monsanto's claim should be litigated in the bankruptcy court.

On February 2, 2006, Monsanto filed its Original Complaint in Cause No. 06CV00155 in the United States District Court for the Eastern District of Missouri styled *Monsanto Company and Monsanto Technology, LLC. v. William Robert Henderson, Jr.* (the "District Court Suit").[1] In the District Court Suit, Monsanto asserts causes of action against Henderson for patent infringement, inducement to infringe, conversion, unjust enrichment, and breach of contract, all of which are related to Henderson's planting of "Roundup Ready" cotton seed that had been saved from a prior year. Presumably in response to the filing of the District Court Suit, Henderson and his wife Charlotte, on April 12, 2006, filed their voluntary petition under chapter 12 of the Bankruptcy Code thereby staying the District Court Suit as to Henderson. On April 17, 2006, Monsanto filed a Suggestion of Bankruptcy concerning Henderson in the District Court Suit. The District Court Suit continues with respect to defendant William Robert Henderson Farms, Inc. No answer has been filed by William Robert Henderson Farms, Inc. and a default judgment will likely be, or perhaps has been, entered against such defendant.

Of significance to this Court on the matter presently under consideration is Monsanto's filing with this Court, on July 11, 2006, its complaint under adversary number 06-05041, styled *Monsanto Company and Monsanto Technology, LLC, plaintiffs v. William Robert Henderson,*

---

[1] According to Monsanto's motion, on February 8, 2006, Monsanto discovered that Henderson was improperly listed on the Original Complaint as "William Robert Henderson, Jr." Therefore, on February 28, 2006, Monsanto filed its First Amended Complaint naming William Robert Henderson, Sr. and William Robert Henderson Farms, Inc. as defendants and terminating William Robert Henderson, Jr. as a party.

*Sr. and Charlotte Ann Henderson, defendants*[2] (the "Dischargeability Suit"), alleging the same causes of action as are asserted in the District Court Suit, but adding a claim that Henderson should not be discharged from such obligations under section 11 U.S.C. § 523(a)(6) of the Bankruptcy Code.

Both the District Court Suit and the Dischargeability Suit are based upon the same underlying factual allegations. In summary, Monsanto alleges in the District Court Suit that it has developed Roundup Ready cotton seed that is resistant to Roundup branded herbicide; that Monsanto's Roundup Ready cotton seed is protected by patents issued by the United States Patent Office; that Henderson is subject to such protections as, upon purchase of Roundup Ready cotton seed, he signed a licensing agreement that provides that he is only authorized to use the seed for planting a commercial crop in a single growing season and is prohibited from saving any of the crop seed produced from the purchased seed for planting or selling in the future; that, in 2005, Henderson planted saved Roundup Ready cotton seed which had been produced from a crop planted in 2004 or an earlier year, and that he sprayed the crop in 2005 with a herbicide containing glyphosate and that such crops were apparently resistant to the herbicide as they were derived from Roundup Ready cotton seed; and that Henderson thereby "knowingly, intentionally, and willfully planted unlicensed, saved Roundup Ready cotton seed without authorization from Monsanto." *See* First Amended Complaint, Hendersons' Ex. 1. Monsanto asserts that Henderson's conduct makes him liable for damages to Monsanto for its claims for patent infringement, inducement to infringe, conversion, unjust enrichment, and breach of

---

[2] As stated, the complaint names William Robert Henderson, Sr. and Charlotte Ann Henderson in the caption, but refers to "defendant," connoting a single defendant. The allegations in the complaint are asserted solely against Mr. Henderson.

contract; in addition, Monsanto seeks a permanent injunction. The Dischargeability Suit raises the same factual allegations and seeks the same relief as does the District Court Suit but, as mentioned above, adds a count asserting that Monsanto's claims should be declared nondischargeable under section 523(a)(6) of the Bankruptcy Code because Henderson "willfully and maliciously infringed on Monsanto's patented seed technology . . . ." *See* Complaint, Hendersons' Ex. 3.

By the motion before the Court, Monsanto contends that "cause" exists to justify modification of the automatic stay to allow it to proceed with the litigation pending in the District Court Suit. The "cause" standard is derived from section 362(d) of the Bankruptcy Code, which states as follows:

> On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay–
>
> > (1) *for cause*, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d) (emphasis added). Both Monsanto and the Hendersons submit that, in determining whether to grant the relief requested by Monsanto, the Court must evaluate certain factors as part of a balancing of the debtors' interests against the movant's interests. *See In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993).

The Bankruptcy Appellate Panel for the Eighth Circuit discussed the cause standard as it relates to granting stay relief to allow a state court action to proceed, and in so doing offered the following:

> [a]lthough the Bankruptcy Code does not define cause, it is clear that cause includes such relief to allow the litigation involving Loudon [debtor] to proceed in state court

>under appropriate circumstances. . . . These circumstances include: '(1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.'. . . By allowing the state court to determine liability and damages, a determination that would otherwise require a trial in the bankruptcy court, but limiting the ability of Amogio Foods [movant] to enforce the judgment, the bankruptcy court substantially reduced the potential harm to Loudon.

*In re Loudon*, 284 B.R. 106, 108 (B.A.P. 8th Cir. 2002). The appellate panel used the same factors three years earlier in *In re Blan*, 237 B.R. 737 (B.A.P. 8th Cir. 1999), a case cited by both parties here. In *Blan*, the appellate panel affirmed the bankruptcy court's decision to lift the stay to allow state court litigation to continue. In addition to reciting the factors above, the *Blan* court stated that "[i]n making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the Debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court." *Id*. at 739.[3]

---

[3]This factor driven approach has been addressed by several courts. The District Court for the Northern District of Texas in Fort Worth reviewed the bankruptcy court's approval of a lift stay motion in *Mooney v. Gill*, 310 B.R. 543 (N.D. Tex 2002). There, the court offered the following in reference to any standard: "[t]he bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code." The district court affirmed the bankruptcy court because the action was already in progress and involved state probate issues. The Bankruptcy Court for the Eastern District of Texas made a brief reference to a process for determining whether or not to lift the stay in *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (E.D. Tex. 1994), but only said,

>[t]he automatic stay may be modified for cause. 11 U.S.C. § 362(d)(1). The *Curtis* case sets out the twelve factors be considered when determining cause. *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). These factors need not be assigned equal weight, and only those factors relevant to the particular case need to be considered.

That court did not, however, apply the *Curtis* factors and the *U.S. Brass* lift request was made by the *debtor* with a creditor seeking protection via the stay. In a related proceeding in the *U.S. Brass* case, the court again mentioned what is to be considered and said,

>[r]elief from the automatic stay will be granted to an unsecured creditor . . . only when the 'balance of hardships' tips in the creditor's favor. When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.

*In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) (internal citations omitted).

- 5 -

The instant case is somewhat different than other cases that have addressed the question of whether the stay should be modified to allow litigation to proceed in another forum. In this case, there are actually two pending lawsuits in which the parties' disputes can potentially be litigated, the District Court Suit pending in Missouri and the Dischargeability Suit pending before the bankruptcy court. In addition, the Dischargeability Suit involves the core bankruptcy issue of whether Mr. Henderson should be discharged from the debt allegedly owed to Monsanto. *See* 28 U.S.C. § 157 (b)(2)(I). The particular circumstance of the two pending actions impacts the Court's evaluation of the various stated factors that have been outlined by the courts. On the

---

For reference, the Curtis Factors were enumerated by the Bankruptcy Court for the District of Utah in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) and are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and balance of harms.

The *Curtis* court was asked to modify the stay in order to join the debtors as defendants in a pending state court action for fraud, negligent misrepresentation, and breach of contract relating to a property exchange. The court denied the motion and stated,

> [t]he Court finds . . . that this case would be more conveniently administered if the stay remained in effect, since this court is in the best position to afford complete relief to the parties. Movants have failed to show that their claim could be liquidated more expeditiously or economically in the state court action.

issue of judicial economy, it is clear that judicial economy is served if the litigation goes forward in *either* the bankruptcy court or the district court. In either event, proceeding to trial in one forum and not the other should save judicial resources, prevent duplicative litigation, and avoid potentially inconsistent results. The Court notes, however, that the Dischargeability Suit is presently set for trial on November 20, 2006; the District Court Suit is not presently set for trial. While it is not unusual to allow one or two brief continuances (one for each side) of a trial setting, the Court would expect a trial to proceed no later than February, 2007.

Monsanto argues that, if allowed to pursue the District Court Suit to judgment, collateral estoppel potentially applies to resolve certain issues raised in the Dischargeability Suit. For example, a finding of willfulness in the District Court Suit may apply via collateral estoppel in the Dischargeability Suit, Monsanto argues. In this regard, the Court would simply note that the collateral estoppel argument potentially applies both ways. In fact, it may be more appropriately applied if the Dischargeability Suit is tried first. Using the same example of a potential willfulness finding, the Court is not certain that a finding of willful conduct (that Henderson "willfully planted saved Roundup Ready cotton seed") is necessarily the same as a willful injury, which is required on a section 523(a)(6) action. *See Kawaauhau v. Geiger*, 523 U.S. 57 (1998).[4] In short, it is clear that all issues of dispute between the parties are raised within the context of the Dischargeability Suit and thus resolution of such action both liquidates Monsanto's claim and resolves the dischargeability question.

---

[4]In *Geiger*, the Supreme Court stated as follows: "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury.'" *Id.* at 61-62.

The Court is also of the opinion that proceeding with the District Court Suit as against Henderson and not the Dischargeability Suit may indeed interfere with the bankruptcy case. A chapter 12 bankruptcy case is intended to proceed on what can be characterized as a fast track. A debtor must file a chapter 12 plan within 90 days and usually proceeds to confirmation within 45 days after the filing of the plan. *See* 11 U.S.C. §§ 1221 and 1224. The Hendersons have filed their chapter 12 plan, which is presently set for confirmation on September 26, 2006. The Hendersons' plan proposes that Monsanto's claim, if allowed, is an unsecured claim to be paid pro rata with other unsecured claims. If history is any guide, the Court assumes that unsecured creditors will not be paid in full. Monsanto's allegations raise extensive damages (including punitive damages and the trebling of damages) that may result in Monsanto holding the vast majority of the debt of unsecured creditors. While the amount of its claim may not necessarily affect the feasibility of the Henderson's plan, the potential nondischargeability of the claim would. If Monsanto's claim is determined to be nondischargeable, questions arise concerning the enforcement of its claim and whether Monsanto may proceed with collection actions against the debtors' assets. Delaying resolution of the dischargeability question serves to potentially prolong the bankruptcy case.

Monsanto stringently argues that the Court should recognize the forum selection clause contained in the licensing agreement signed by Mr. Henderson. This provision states as follows:

> 3. Forum Selection For Non-Cotton-Related Claims Made by Grower and All Other Claims: The parties consent to the sole and exclusive jurisdiction and venue of the U.S. District Court for the Eastern District of Missouri, Eastern Division, and the Circuit Court of the county of St. Louis, Missouri, (any lawsuit must be filed in St. Louis, MO) for all claims and disputes arising out of or connected in any way with this agreement and the use of the seed or the Monsanto Technologies, except for cotton-related claims made by grower.

Monsanto Ex. 1 at 2. The issue concerning the forum selection clause is, in the Court's view, a red herring. The Court is not invalidating such provision by *allowing* the parties to proceed with litigation in the bankruptcy court on an action initiated by the very party, Monsanto, that seeks to enforce the forum selection clause. The Court is merely concluding that relief from the automatic stay at this time is not warranted. As presently postured, proceeding with adjudication of the Dischargeability Suit is the cheapest, fairest, and quickest way to resolve all disputes between the parties.

The factors discussed by the Court above predominate on the question of whether the automatic stay should be modified. The Court is of the opinion that the various additional factors as outlined by other courts for consideration are not dispositive on the question before the Court. The Court will therefore deny the relief requested by Monsanto but does so without prejudice to Monsanto seeking relief at a later date. If, for example, the Dischargeability Suit does not resolve all issues before the Court, the Court will entertain a subsequent motion by Monsanto.

### End of Memorandum Opinion ###